J-S37002-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: F.S.L.R., A MINOR | : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: K.R., MOTHER | : | No. 239 EDA 2015 |

Appeal from the Decree December 9, 2014
In the Court of Common Pleas of Philadelphia County
Family Court at No(s): CP-51-AP-0000305-2014

BEFORE:  GANTMAN, P.J., SHOGAN, J., and LAZARUS, J.

MEMORANDUM BY GANTMAN, P.J.:                **FILED JUNE 09, 2015**

Appellant, K.R. ("Mother"), appeals from the decree entered in the Philadelphia County Court of Common Pleas, which granted the petition of Appellee, Philadelphia County Department of Human Services ("DHS"), for involuntary termination of Mother's parental rights as to her minor child, F.S.L.R. ("Child").  We affirm.

The relevant facts and procedural history of this appeal are as follows.

> The minor mother was in the custody of DHS at the time of [Child's] birth.
>
> [Mother] has been in three different mother/baby placement foster homes due to her poor behavior.
>
> On October 17, 2011, DHS held a Family Service Plan ("FSP") meeting.  The FSP objectives for the mother were as follows: 1) to ensure adequate supervision for [Child]; 2) to ensure for [Child's] safety and basic needs; and 3) to attend the Achieving Independence Center ("AIC") for training on proper care for [Child].  [Mother] failed to attend the FSP meeting.

On July 23, 2012, [Mother] was placed by DHS at Guardian Angel group home where she demonstrated significant behavioral problems. [Mother] voluntarily left placement with [Child] several times and refused to disclose her whereabouts with [Child] during the absences. [Mother] was verbally abusive and physically threatening toward staff at her placement. Furthermore, [Mother] missed medical appointments for [C]hild. Lastly, on September 11, 2012, during a room check, [M]other barricaded herself and [Child] in her room with dressers and the staff had to forcibly open the door.

On October 23, 2012, at a dependent hearing for [Child], … [M]other testified that she would continue to be non-compliant with the rules of the group home. [The court] ordered that DHS obtain an Order of Protective Custody ("OPC") for [Child]. [Mother] abruptly left the courtroom, ran to another floor in the Family Court building and broke the glass of two door windows. [Mother] was restrained by security and taken to the hospital where she was treated for lacerations to her hands.

On October 23, 2012, DHS obtained an [OPC] for [Child] and placed her at the Baring House.

A shelter care hearing was held on October 25, 2012…. [The court] ordered that [Child] be temporarily committed to DHS.

On November 5, 2012, an adjudicatory hearing was held…. [Child] was adjudicated dependent and committed to DHS.

On December 20, 2012, DHS held an FSP meeting. The FSP objectives for [M]other were: 1) to receive mental health services, including anger management counseling; 2) to comply with the Achieving Reunification Center ("ARC"); 3) to attend [F]amily [S]chool; and 4) to attend medical appointments for [Child].

On March 7, 2014, DHS held an FSP meeting with the following objectives for [Mother]: 1) to attend Family School; 2) to complete an anger management program; 3) to obtain suitable housing; 4) to participate in mental health treatment; 5) to obtain employment; [and] 6) to

participate in visits with [Child].

The matter was then listed on a regular basis before Judges of the Philadelphia Court of Common Pleas—Family Court Division—Juvenile Branch pursuant to…the Juvenile Act, 42 Pa.C.S.A. § 6351, and evaluated for the purpose of determining or reviewing the permanency plan of [Child] with the goal of reunification of the family.

(Trial Court Opinion, filed February 23, 2015, at 1-2).

On June 20, 2014, DHS filed a petition for involuntary termination of Mother's parental rights.[1] The court conducted a termination hearing on December 9, 2014. Immediately following the hearing, the court entered a final decree terminating Mother's parental rights to Child. On January 8, 2015, Mother timely filed a notice of appeal, which included a concise statement of errors complained of on appeal, pursuant to Pa.R.A.P. 1925(a)(2)(i).

Mother raises four issues for our review:

DID THE [TRIAL] COURT ERR IN DETERMINING THAT THE PETITIONER, DHS, MET ITS BURDEN OF PROVING, BY CLEAR AND CONVINCING EVIDENCE, THE GROUNDS FOR TERMINATION OF MOTHER'S [PARENTAL] RIGHTS PURSUANT TO 23 PA.C.S.A. § 2511(a)(1) AND (b).

DID THE [TRIAL] COURT ERR IN DETERMINING THAT THE PETITIONER, DHS, MET ITS BURDEN OF PROVING, BY CLEAR AND CONVINCING EVIDENCE, THE GROUNDS FOR TERMINATION OF MOTHER'S [PARENTAL] RIGHTS PURSUANT TO 23 PA.C.S.A. § 2511(a)(2) AND (b).

DID THE [TRIAL] COURT ERR IN DETERMINING THAT THE

---

[1] DHS also sought the involuntary termination of Father's parental rights, which the court granted in a decree entered December 9, 2014. Father is not a party to the current appeal.

- 3 -

PETITIONER, DHS, MET ITS BURDEN OF PROVING, BY CLEAR AND CONVINCING EVIDENCE, THE GROUNDS FOR TERMINATION OF MOTHER'S [PARENTAL] RIGHTS PURSUANT TO 23 PA.C.S.A. § 2511(a)(5) AND (b).

DID THE [TRIAL] COURT ERR IN DETERMINING THAT THE PETITIONER, DHS, MET ITS BURDEN OF PROVING, BY CLEAR AND CONVINCING EVIDENCE, THE GROUNDS FOR TERMINATION OF MOTHER'S [PARENTAL] RIGHTS PURSUANT TO 23 PA.C.S.A. § 2511(a)(8) AND (b).

(Mother's Brief at 5).

On appeal, Mother asserts she did not demonstrate a settled purpose of relinquishing her parental claim to Child. Mother contends she devoted countless hours to maintaining her parental rights by consistently visiting Child, obtaining suitable housing and employment, participating in mental health therapy sessions and anger management counseling, attending Family School, and carrying a full-time college course load. Regarding her mental health, Mother insists she attended therapy sessions at Life Counseling Services on a weekly basis for three months, followed by less frequent participation for another three months. Mother argues her considerable efforts do not establish any refusal or failure to perform parental duties. Mother further argues she remedied the factors that led to DHS's involvement, and the conditions necessitating Child's placement no longer exist. Additionally, Mother emphasizes the social worker's testimony that some bond exists between Mother and Child. Mother concludes the court erroneously terminated her parental rights. We disagree.

Appellate review in termination of parental rights cases implicates the

- 4 -

following principles:

> In cases involving termination of parental rights: "our standard of review is limited to determining whether the order of the trial court is supported by competent evidence, and whether the trial court gave adequate consideration to the effect of such a decree on the welfare of the child."

*In re Z.P.*, 994 A.2d 1108, 1115 (Pa.Super. 2010) (quoting *In re I.J.*, 972

A.2d 5, 8 (Pa.Super. 2009)).

> Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand. … We must employ a broad, comprehensive review of the record in order to determine whether the trial court's decision is supported by competent evidence.
>
> *In re B.L.W.*, 843 A.2d 380, 383 (Pa.Super. 2004) (*en banc*)*, appeal denied*, 581 Pa. 668, 863 A.2d 1141 (2004) (internal citations omitted).
>
> Furthermore, we note that the trial court, as the finder of fact, is the sole determiner of the credibility of witnesses and all conflicts in testimony are to be resolved by [the] finder of fact. The burden of proof is on the party seeking termination to establish by clear and convincing evidence the existence of grounds for doing so.
>
> *In re Adoption of A.C.H.*, 803 A.2d 224, 228 (Pa.Super. 2002) (internal citations and quotation marks omitted). The standard of clear and convincing evidence means testimony that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitation, of the truth of the precise facts in issue. *In re J.D.W.M.*, 810 A.2d 688, 690 (Pa.Super. 2002). We may uphold a termination decision if any proper basis exists for the result reached. *In re C.S.*, 761 A.2d 1197, 1201 (Pa.Super. 2000) (*en banc*). If the court's findings are supported by competent evidence, we must affirm the court's decision, even if the record could support an

opposite result. ***In re R.L.T.M.***, 860 A.2d 190, 191[-92] (Pa.Super. 2004).

***In re Z.P., supra*** at 1115-16 (quoting ***In re Adoption of K.J.***, 936 A.2d 1128, 1131-32 (Pa.Super. 2007), *appeal denied*, 597 Pa. 718, 951 A.2d 1165 (2008)).

DHS sought the involuntary termination of Mother's parental rights on the following grounds:

### § 2511.  Grounds for involuntary termination

**(a)   General Rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1)   The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

(2)   The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

*    *    *

(5)   The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to

remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

\* \* \*

(8)　The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

\* \* \*

**(b)　Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child.　The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent.　With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8); (b).　"Parental rights may be involuntarily terminated where any one subsection of Section 2511(a) is satisfied, along with consideration of the subsection 2511(b) provisions." *In re Z.P., supra* at 1117.

"A court may terminate parental rights under subsection 2511(a)(1) when the parent demonstrates a settled purpose to relinquish parental claim to a child or fails to perform parental duties for at least six months prior to

the filing of the termination petition." ***In re I.J., supra*** at 10.

> Although it is the six months immediately preceding the filing of the petition that is most critical to the analysis, the trial court must consider the whole history of a given case and not mechanically apply the six-month statutory provision. The court must examine the individual circumstances of each case and consider all explanations offered by the parent facing termination of…her parental rights, to determine if the evidence, in light of the totality of the circumstances, clearly warrants the involuntary termination.

***In re B.,N.M.***, 856 A.2d 847, 855 (Pa.Super. 2004), *appeal denied*, 582 Pa. 718, 872 A.2d 1200 (2005) (internal citations omitted).

"The bases for termination of parental rights under Section 2511(a)(2), due to parental incapacity that cannot be remedied, are not limited to affirmative misconduct; to the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties." ***In re S.C.B.***, 990 A.2d 762, 771 (Pa.Super. 2010). "Parents are required to make diligent efforts towards the reasonably prompt assumption of full parental responsibilities." ***In re A.L.D.***, 797 A.2d 326, 340 (Pa.Super. 2002) (quoting ***In re J.W.***, 578 A.2d 952, 959 (Pa.Super. 1990)). The fundamental test in termination of parental rights under Section 2511(a)(2), was stated in ***In re Geiger***, 459 Pa. 636, 331 A.2d 172 (1975), where the Pennsylvania Supreme Court announced that under what is now Section 2511(a)(2), "the petitioner for involuntary termination must prove (1) repeated and continued incapacity, abuse, neglect or refusal; (2) that such incapacity, abuse, neglect or refusal caused the child to be without essential

parental care, control or subsistence; and (3) that the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied." ***In Interest of Lilley***, 719 A.2d 327, 330 (Pa.Super. 1998).

"Termination of parental rights under Section 2511(a)(5) requires that: (1) the child has been removed from parental care for at least six months; (2) the conditions which led to removal and placement of the child continue to exist; and (3) termination of parental rights would best serve the needs and welfare of the child." ***In re Z.P., supra*** at 1118.

"[T]o terminate parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(8), the following factors must be demonstrated: (1) The child has been removed from parental care for 12 months or more from the date of removal; (2) the conditions which led to the removal or placement of the child continue to exist; and (3) termination of parental rights would best serve the needs and welfare of the child." ***In re Adoption of M.E.P.***, 825 A.2d 1266, 1275-76 (Pa.Super. 2003).

Under Section 2511(b), the court must consider whether termination will best serve the child's needs and welfare. ***In re C.P.***, 901 A.2d 516 (Pa.Super. 2006). "Intangibles such as love, comfort, security, and stability are involved when inquiring about the needs and welfare of the child." ***Id.*** at 520. "In this context, the court must take into account whether a bond exists between child and parent, and whether termination would destroy an existing, necessary and beneficial relationship." ***In re Z.P., supra*** at 1121.

- 9 -

"It is universally agreed that the bond of parental affection is unique and irreplaceable." **In re Diaz**, 669 A.2d 372, 377 (Pa.Super. 1995).

> When parents act in accordance with the natural bonds of parental affection, preservation of the parent-child bond is **prima facie** in the best interest of the child, and the state has no justification to terminate that bond. On the other hand, a court may properly terminate parental bonds which exist **in form** but not **in substance** when preservation of the parental bond would consign a child to an indefinite, unhappy, and unstable future devoid of the irreducible minimum parental care to which that child is entitled.

**Id.** (quoting **In re J.W., supra** at 958) (emphasis in original).

"The statute permitting the termination of parental rights outlines certain irreducible minimum requirements of care that parents must provide for their children, and a parent who cannot or will not meet the requirements within a reasonable time following intervention by the state, may properly be considered unfit and may properly have…her rights terminated." **In re B.L.L.**, 787 A.2d 1007, 1013 (Pa.Super. 2001). This Court has said:

> There is no simple or easy definition of parental duties. Parental duty is best understood in relation to the needs of a child. A child needs love, protection, guidance, and support. These needs, physical and emotional, cannot be met by a merely passive interest in the development of the child. Thus, this court has held that the parental obligation is a positive duty which requires affirmative performance.
>
> This affirmative duty encompasses more than a financial obligation; it requires continuing interest in the child and a genuine effort to maintain communication and association with the child.

> Because a child needs more than a benefactor, parental duty requires that a parent exert [herself] to take and maintain a place of importance in the child's life.
>
> Parental duty requires that the parent act affirmatively with good faith interest and effort, and not yield to every problem, in order to maintain the parent-child relationship to the best of...her ability, even in difficult circumstances. A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with [the child's] physical and emotional needs.

*In re B.,N.M., supra* at 855 (internal citations and quotation marks omitted). "[A] parent's basic constitutional right to the custody and rearing of...her child is converted, upon the failure to fulfill...her parental duties, to the child's right to have proper parenting and fulfillment of...her potential in a permanent, healthy, safe environment." *Id.* at 856.

Instantly, Child has been in the continuous custody of DHS since October 23, 2012. At the termination hearing, the court received testimony from Megan Flanagan, the social worker assigned to the case. Ms. Flanagan confirmed that Mother consistently visited with Child, but Mother would not arrive on time for the visits. Specifically, Mother would arrive thirty to forty-five minutes late for a two-hour visit. Ms. Flanagan also noted that Child acted out after some of Mother's visits.

Ms. Flanagan explained the circumstances surrounding Mother's

discharge from Family School:

> [MS. FLANAGAN]: It was reported that [M]other…and [C]hild had gotten everything out of Family School, it had gone as far as it would go. Mother…also had irregular attendance…and from my agency it was very difficult to be taking the child from the Northeast to West Philadelphia in that sometimes [M]other didn't show up.
>
> [DHS ATTORNEY]: So, in terms of being discharged from Family School, you said that [M]other wasn't going to get anything else out of it, is that because she achieved all that a person could achieve at Family School or because she wasn't holding up her end of the bargain at Family School?
>
> [MS. FLANAGAN]: She didn't hold up her end of the bargain at Family School.
>
> [DHS ATTORNEY]: So there was progress for her to make, it's just that she wasn't going to make it (inaudible)?
>
> [MS. FLANAGAN]: They even said to me that she basically hit a wall, you know, she had met enough criteria but it didn't look like she had effort to move forward with anything else.

(*See* N.T. Termination Hearing at 15; R.R. at 53a.)

Regarding mental health treatment, Ms. Flanagan reiterated that Mother did not complete her FSP goal. Ms. Flanagan stated that the agency had referred Mother for mental health evaluations, but Mother failed to provide documentation memorializing her mental health treatment. On cross-examination, Ms. Flanagan elaborated: "[Life Counseling Services] told me that they had documentation that [Mother] had attended therapy, but they did not discharge her from therapy, that she had stopped going." (*Id.*

- 12 -

at 20; 58a).

Significantly, Ms. Flanagan opined that Mother does not have a parent/child bond with Child:

> [DHS ATTORNEY]: What kind of bond would you say that [Mother] has [with Child]?
>
> [MS. FLANAGAN]: Friendship.
>
> [DHS ATTORNEY]: And what's your basis for saying that?
>
> [MS. FLANAGAN]: When [Child] is upset, anything happens to [Child], if she's feeling tired, if she's off, she always cries out for her grandmother. She sometimes asks where [M]om-[M]om [is], that's what she calls her paternal grandmother. It appears to me that is the parental bond that she has at this time.

(*Id.* at 17; R.R. at 55a).

Mother also testified at the hearing, claiming she attended mental health therapy sessions at Life Counseling Services in 2013. Mother said she signed a release form to allow DHS and the court to access her mental health records. Mother insisted she had completed two mental health evaluations, and "both came back stating I didn't need any medical treatment, I didn't need any further…therapy or mental health help." (*Id.* at 37; R.R. at 75a). Additionally, Mother asserted she had ceased communicating with her therapist, because Mother still owed money to Life Counseling Services. In support of her testimony, Mother submitted a billing ledger from Life Counseling Services, which indicated Life Counseling Services had billed Mother for an "eval" and three "individual therapy"

sessions occurring in August and September 2013. (*See* Mother's Exhibit 2, dated 4/18/14, at 1.)

Based upon the foregoing, the court issued the following credibility determinations:

> [T]he trial court found that the social worker for [DHS] testified credibly. The testimony regarding [M]other's failure to provide mental health documentation to the social worker was credible. The testimony regarding Mother's failure to act in accordance with her [FSP] objectives was consistent. Lastly, the [c]ourt did not find the testimony of [Mother] credible.

(*See* Trial Court Opinion at 6) (internal citations to the record omitted). Consequently, the court concluded that DHS had satisfied its burden by presenting clear and convincing evidence of the need to terminate Mother's parental rights to Child. The record supports the court's conclusion that termination of Mother's parental rights was in Child's best interests. *See In re Z.P., supra*; *In re B.L.L., supra*. Accordingly, we affirm.

Decree affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/9/2015

- 14 -